J-A26038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

v.

SCOT DOUGLAS MALINOWSKI

Appellant

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
: No. 401 MDA 2017

Appeal from the Judgment of Sentence February 27, 2017
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0000896-2016

BEFORE:  BOWES, J., OLSON, J., and RANSOM, J.

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 17, 2018**

Appellant, Scot Douglas Malinowski, appeals from the judgment of sentence of sixty (60) months of intermediate punishment, including ninety (90) days in a restrictive setting and restorative monetary sanctions, imposed February 27, 2017, following a bench trial resulting in his conviction for driving under the influence (DUI) – controlled substance (Schedule I), DUI – controlled substance (metabolite), and DUI – controlled substance, general impairment.[1]  We affirm.

The following facts were established at a pre-trial suppression hearing. Officer Joshua Rosenburger observed a vehicle traveling on Mummasburg Road.  Notes of Testimony (N.T.), 10/20/2016, at 5.  The Officer observed the vehicle turn left into a development and accelerate at a high rate of speed.

_____

[1] *See* 75 Pa.C.S. §§ 3802(d)(1)(i), 3802(d)(1)(iii), and 3802(d)(2).

*Id.* at 5-6. The Officer continued to follow the vehicle until he observed the vehicle stop. *Id.* at 6. Appellant, the operator of the vehicle, got out of the vehicle, and he opened up the hood of the car. *Id.* at 6. Appellant also put the four-ways on. *Id.*

Believing that Appellant was having some sort of vehicle trouble, the Officer stopped his patrol vehicle to ask if everything was okay. *Id.* Appellant indicated that he had vehicle problems, such as low engine oil or something along those lines. *Id.* As the Officer approached Appellant, he noticed that Appellant appeared extremely nervous. *Id.* at 7. The Officer asked Appellant about drug use. At first, Appellant responded that he had smoked marijuana weeks prior; later, Appellant admitted to smoking two days prior. *Id.* at 7-8. The Officer commenced field sobriety testing and observed clues of impairment. *Id.* He testified that Appellant had "a thick substance on his tongue, which is an indicator of marijuana use, as well as a marked running of his conjunctiva, which [exists when] you pull the eyelid down [to reveal] extremely pronounced reddening at the bottom of the eye." *Id.* at 8. The Officer performed other tests, but not all tests indicated signs of impairment. *Id.* at 9. Thereafter, Appellant was placed under arrest for DUI.

Appellant was advised by the Officer that he would be taken to Gettysburg Hospital where the Officer would request Appellant to take a blood test. *Id.* at 9-10. Appellant was handcuffed and placed into the back of the Officer's patrol vehicle. *Id.* at 10. Appellant indicated his willingness to take the test because he believed that the test would reveal that he had no drugs

- 2 -

in his system. *Id.* at 10. There was no further discussion between the Officer and Appellant regarding the blood draw. After the Officer filled out some paperwork, Appellant extended his arm for the blood draw and two vials of blood were removed by a lab technician at 3:30 p.m. *Id.* at 10-11. The Officer testified that he was trained that it was not necessary to read a DL-26 form containing implied consent warnings, where the arrestee gives no indication of his intent to refuse to comply with the test. *Id.* at 11. The test results were returned to the officer. *Id.* at 12. The results showed that Appellant's blood contained Delta 9 Carboxy THC and Delta 9 THC (tested positive for marijuana). Trial Ct. Op. (TCO), 10/31/2016, at 3.

At the suppression hearing, Appellant testified that he "didn't necessarily want the blood draw" because he already had a prior DUI. N.T. at 18. He testified that he was informed on the prior DUI that he could spend a few days in jail if he failed to do the blood draw. *Id.* In the instant case, he claimed that he complied with the officer "to get it done and over with as fast as [he] could at that point in time out of frustration." *Id.* at 19.

The suppression court found Appellant's testimony self-serving and not credible and denied Appellant's motion to suppress blood test results. *Id.* at 28. Following a bench trial, where the blood test results were admitted, Appellant was found guilty. On February 27, 2017, Appellant was sentenced as described above.

Appellant timely appealed and filed a court-ordered 1925(b) statement. The court issued a responsive opinion.

On appeal, Appellant raises only one issue for review:

Whether the lower court erred when it did not suppress the results of a blood draw in a DUI investigation where verbal warnings of criminal penalties for refusal of a blood draw were not made, but Malinowski had presumptive knowledge of the law indicating that a refusal of the request for a blood draw could trigger enhanced criminal penalties.

Appellant's Br. at 5.

Appellant contends that the trial court erred in denying his motion to suppress. According to Appellant, his consent to a blood draw must be deemed involuntary. Appellant's Br. at 10 (citing, *inter alia*, **Birchfield v. North Dakota**, 136 S.Ct. 2160 (2016)).

Our standard of review is as follows:

Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights. With respect to an appeal from the denial of a motion to suppress, our Supreme Court has declared: Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing [such a ruling by the] suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. ... Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

**Commonwealth v. Evans**, 153 A.3d 323, 327 (Pa. Super. 2016) (internal citations and quotation marks omitted).

"The Fourth Amendment to the [United States] Constitution

and Article I, Section 8 of [the Pennsylvania] Constitution protect citizens from unreasonable searches and seizures." *Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012). "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). "Exceptions to the warrant requirement include the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception ..., the stop and frisk exception, and the search incident to arrest exception." *Commonwealth v. Dunnavant*, 63 A.3d 1252, 1257 n.3 (Pa. Super. 2013).

The "administration of a blood test ... performed by an agent of, or at the direction of the government" constitutes a search under both the United States and Pennsylvania Constitutions. *Commonwealth v. Kohl*, 615 A.2d 308, 315 (Pa. 1992); *Schmerber*[, 384 U.S. at 770]. Since the blood test in the case at bar was performed without a warrant, the search is presumptively unreasonable "and therefore constitutionally impermissible, unless an established exception applies." *Strickler*, 757 A.2d at 888.

*Evans*, 153 A.3d at 327-28. "One such exception is consent, voluntarily given." *Strickler*, 757 A.2d at 888-889 (citing *Schneckloth v. Bustmonte*, 412 U.S. 218, 219 (1973)). Under the Fourth Amendment, where an encounter between law enforcement is lawful, voluntariness of consent to a search becomes the exclusive focus. *See id*.

In *Birchfield*, the Supreme Court of the United States held "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Birchfield*, 136 S.Ct. at 2185-86. At the time of Appellant's arrest, Pennsylvania's implied consent scheme "undoubtedly impose[d] criminal penalties on the refusal to submit to a blood

test." **Evans**, 153 A.3d at 331 (quoting **Birchfield**, 136 S.Ct. at 2185-86).

Appellant contends that his consent was involuntary because it was made "with presumptive knowledge of the danger of enhanced criminal penalties for refusal." Appellant's Br. at 10. According to Appellant, he was potentially subject to criminal penalties for refusal – "the same coercive measure fatal to searches in **Birchfield** and **Evans**." Appellant's Br. at 15 (also referring to "an umbrella threat of increased criminal penalties for refusing a blood draw"). In support of this argument, Appellant directs our attention to the ancient maxim that everyone is presumed to know the law and ignorance of the law excuses no one. **See id.** In conclusion, Appellant boldly suggests that "all consent to warrantless blood draws in the time of post-**Birchfield** [sic] … [should] be *per se* invalid." **Id.** at 16. Appellant's argument is without merit.

At the time of Appellant's arrest, the law was that the police must inform an arrestee of the consequences of refusal. **Pa. Dep't of Transport. v. O'Connell**, 555 A.2d 873, 877 (Pa. 1989) (citing **Everhart v. Commonwealth**, 420 A.2d 13 (1980) ("a precisely enunciated warning that a driver's license will be revoked is now an additional prerequisite to suspension or revocation of driving privileges for refusal to consent," **id.** at 15)). Absent a proper warning, there could be no consequences for refusal. **Id.** Accordingly, even if we were to accept the premise of Appellant's

argument regarding "presumptive knowledge," Appellant's argument fails.[2]

Further, Appellant's reliance on **Birchfield** is inapposite. "**Birchfield** makes plain that the police may not threaten enhanced punishment for refusing a blood test in order to obtain consent, 136 S.Ct. at 2186; whether that enhanced punishment is (or can be) ultimately imposed is irrelevant to the question whether the consent was valid." **Commonwealth v. Ennels**, 167 A.3d 716, 724 (Pa. Super. 2017), *reargument denied* (Sept. 19, 2017). Unlike in **Evans** and **Ennels**, Appellant concedes that he was not threatened with enhanced criminal penalties prior to consenting to the blood test. **Compare** Appellant's Br. at 10, with **Evans**, 153 A.3d at 325-326. Under **Ennels, supra**, the mere existence of legislation that imposed criminal penalties for refusal, absent an actual threat, does not amount to coercion or invalidate the consent given.

In evaluating voluntariness of consent, Pennsylvania courts evaluate the following factors objectively, based upon the totality of all the circumstances:

> 1) the defendant's custodial status; 2) the use of duress or coercive tactics by law enforcement personnel; 3) the defendant's knowledge of his right to refuse to consent; 4) the defendant's

---

[2] Indeed, if Appellant was subjected to criminal penalties for refusal, he would have a viable claim based on the officer's failure to comply with **O'Connell**. The Pennsylvania Supreme Court has held that the implied consent statute does not supplant the right of arrestees to make a knowing and conscious choice with regard to whether to consent to a chemical test. **See Commonwealth v. Myers**, 164 A.3d 1162, 1181 (Pa. 2017) (holding that an *unconscious* arrestee was incapable of voluntarily consenting to a blood test because his unconscious state deprived him of ability to make a knowing and conscious choice under the totality of the circumstances).

education and intelligence; 5) the defendant's belief that no incriminating evidence will be found; and 6) the extent and level of the defendant's cooperation with the law enforcement personnel.

***Commonwealth v. Cleckley***, 738 A.2d 427, 433 (Pa. 1999) ("***Cleckley*** factors") (citation omitted); ***see also Smith***, 77 A.3d at 573. Under Pennsylvania law, an arrestee need not be informed of the right to refuse a chemical test in order for the consent to be voluntary under Article I, Section 8 of the Pennsylvania Constitution. ***Cleckley***, 738 A.2d at 428.

In this case, the suppression court recognized that certain facts militated against a finding of voluntariness. For example, Appellant was under arrest and in custody at the time of blood draw, which created an "inherently coercive atmosphere[.]" TCO at 7. Appellant also was not advised of his right to refuse to consent. ***Id.*** However, the court correctly concluded that these facts were not determinative of whether consent was voluntarily given. ***Id.***; ***see Cleckley***, 738 A.2d at 432.

In finding the consent was voluntary, the court deemed the following facts dispositive: (1) "[Appellant] knew he was consenting to the taking of his blood by law enforcement"; (2) Appellant did not act under duress; (3) Officer Rosenberger did not use coercive tactics; and (4) Appellant also indicated to the officer his belief that no drugs would be found in his system. ***See*** TCO at 7-8. Based on Appellant's belief that no incriminating evidence would be found, his cooperation with Officer Rosenberger, his lack of objection to the need for a blood test, lack of mental turmoil in agreeing to take the test, and

willful extension of his right arm, the suppression court concluded that Appellant provided knowing and voluntary consent to the blood draw under the totality of the circumstances. *Id.* at 8-9.[3]

Moreover, the trial court succinctly summarized why this argument lacks merit:

> There is no evidence, even if [Appellant] was knowledgeable about the implied consent refusal penalties, that the mere existence of such a law was so coercive that [Appellant's] free will was overborne. [Appellant] neither expressed nor displayed any sights of such intellectual turmoil to the police officer.

Trial Court Opinion (TCO), 10/31/2016, at 9.

Viewing the record objectively considering the totality of the circumstances, the Commonwealth's evidence was sufficient to establish that his consent was "the product of an essentially free and unconstrained choice." *Strickler*, 757 A.2d at 901. As the court's conclusions are supported by the record, we discern no error. *Smith*, 77 A.3d at 573.

Judgment of sentence affirmed. Jurisdiction relinquished.

---

[3] Notably, Appellant waived any challenge to the court's assessment of the *Cleckley* factors by failure to preserve the issue and failure to develop a meaningful argument in his brief. *See* Pa.R.A.P. 302; Pa.R.A.P. 2119.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/17/2018</u>